**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 18 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: RALPH DEAN ISOM; PAULA ISOM; I & S FARMS, | No. 20-60019 |
| Debtors, | BAP No. 19-1198 |
| ------------------------------ | |
| RALPH DEAN ISOM; PAULA ISOM; I & S FARMS, a general partnership, | MEMORANDUM[*] |
| Appellants, | |
| v. | |
| R. SAM HOPKINS, Chapter 7 Trustee; BRAD HALL & ASSOCIATES, INC.; FARMS, LLC, | |
| Appellees. | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Brand, Gan, and Lafferty III, Bankruptcy Judges, Presiding

Argued and Submitted December 8, 2020
Seattle, Washington

Before: BERZON, MILLER, and BRESS, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Petitioners Ralph Dean Isom, Paula Isom, and I&S Farms (collectively "Isoms"), debtors in this Chapter 7 bankruptcy proceeding, appeal the Ninth Circuit Bankruptcy Appellate Panel's affirmance of the bankruptcy court's order approving a compromise agreement between the Chapter 7 trustee, R. Sam Hopkins, and the bankruptcy estate's major secured creditor, Brad Hall & Associates and Farms, LLC (collectively "Hall"). We affirm.

We review an order approving a compromise agreement for abuse of discretion. *In re A & C Props.*, 784 F.2d 1377, 1380 (9th Cir. 1986). We review *de novo* whether the bankruptcy court applied the correct legal rule. *In re Taylor*, 599 F.3d 880, 887 (9th Cir. 2010). If it did, we uphold the court's application of the legal standard to the facts unless it was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)).

1. The bankruptcy court correctly identified its legal obligation to find Hopkins's compromise proposal "fair and equitable" under *A & C* before approving the settlement. 784 F.2d at 1381. Although the bankruptcy court did not consider any surplus that might have gone to the debtors in its analysis of the *A & C* factors, it did consider this issue under its general "fair and equitable" analysis. Similarly, although the bankruptcy court did not explicitly identify the trustee's fiduciary duty to the debtors in this potential surplus case, *see* U.S. Dep't of

2

Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees 4–2 (2012), it nevertheless considered whether the trustee fulfilled this duty before approving the compromise proposal. We therefore hold that the bankruptcy court applied the correct legal standard in analyzing the compromise proposal.

2. The bankruptcy court's application of the law was logical, plausible, and supported by inferences drawn from the facts in the record. In his oral ruling granting Hopkins's motion to compromise, the bankruptcy judge fully addressed each party's arguments on each of the four *A & C* factors before making findings of its own. When analyzing the first factor—the likelihood that the Isoms would ultimately prevail in their avoidance suit against Hall—the bankruptcy court considered evidence that the Isoms were insolvent, were left with unreasonably small capital, or incurred debts beyond their ability to pay under 11 U.S.C. § 548 (a)(1)(B)(ii)(I) and (II). Relying extensively on the record, the bankruptcy court concluded it would be difficult to prove these issues because "many important records were alternatively stolen and thrown in a canal or destroyed by a fire set by Mr. Isom."

The bankruptcy court also reasonably concluded that the third *A & C* factor—the complexity of the avoidance suit and the likely expense and delay of continued litigation—weighed in favor of the settlement. As the bankruptcy court

3

properly noted, Hall's profit from rents on the Isom Farm would offset any improvements Hall made to the Farm—including the property taxes it paid and the money it paid to the Farm's other secured creditors—under 11 U.S.C. § 550(e)(1)(A). But it remains unclear whether this profit would affect any of Hall's claims to accruing interest should the deed-in-lieu be voided and Hall's secured claim over the Farm be reinstated. The bankruptcy court reasonably concluded that the difficulties in calculating interest owed and the likelihood of further litigation arising out of that calculation, as well as the immense expense the estate would bear if it owed Hall interest in full, supported the settlement.

The bankruptcy court also carefully weighed the facts in the record before determining that a compromise agreement guaranteeing full payment of all creditors, rather than the possibility of a post-avoidance sale, best served the interests of the creditors under the fourth *A & C* factor. The bankruptcy court reasonably found that the complications in calculating the estate's tax liability on any proceeds, along with the estate's potential obligation to pay interest to Hall, significantly detracted from the possibility of a surplus in a post-avoidance sale. Hopkins testified that there were no actual offers on the Farm at the time of the settlement negotiations, and several witnesses attested to the difficulty of validating the Isoms' tax records. The record therefore supported the bankruptcy court's conclusion that the likelihood of any surplus was speculative.

Because the bankruptcy court "reached a decision that falls within any of the permissible choices [it] could have made," *Hinkson*, 585 F.3d at 1261, we hold the bankruptcy court did not abuse its discretion in approving the motion to compromise.

**AFFIRMED**.